

FILED

2008 SEP -8 PM 4:02

CLERK U.S. DISTRICT COURT
CENTRAL DIST. OF CALIF.
LOS ANGELES

BY _____

1  ROBINS, KAPLAN, MILLER & CIRESI L.L.P.
   ROMAN M. SILBERFELD, State Bar # 62783
2  RMSilberfeld@rkmc.com
   BERNICE CONN, State Bar # 161594
3  BConn@rkmc.com
   MICHAEL A. GEIBELSON, State Bar # 179970
4  MAGeibelson@rkmc.com
   2049 Century Park East, Suite 3400
5  Los Angeles, CA  90067-3208
   Telephone:    310-552-0130
6  Facsimile:    310-229-5800

7  SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
      A Limited Liability Partnership
8     Including Professional Corporations
   ROBERT D. ROSE, Cal. Bar No. 62559
9  rrose@sheppardmullin.com
   DAVID F GENESON  FL. Bar No. 173525
10 dgeneson@sheppardmullin.com
   REBECCA S. ROBERTS, Cal. Bar No. 225757
11 rroberts@sheppardmullin.com
   501 West Broadway, 19th Floor
12 San Diego, CA  92101-3598
   Telephone: 619-338-6500
13 Facsimile: 619-234-3815

14 Attorneys for INTERNATIONAL RECTIFIER

15           THE UNITED STATES DISTRICT COURT

16         FOR THE CENTRAL DISTRICT OF CALIFORNIA

17                    WESTERN DIVISION
                                           CV08-05869  R  AJWx

18 INTERNATIONAL RECTIFIER, a     | Case No.
   Delaware Corporation,          |
19                                | COMPLAINT FOR:
                  Plaintiff,      |
20                                | 1.  CIVIL RICO, 18 U.S.C. § 1962(c);
        v.                        | 2.  CIVIL RICO, 18 U.S.C. § 1962(d);
21                                | 3.  FRAUD AND DECEIT;
   ALEX LIDOW, an individual; ROBERT | 4.  MISAPPROPRIATION OF TRADE
22 BEACH, an individual; JIANJUAN "JOE" |     SECRET(S);
   CAO, an individual; DAVID TAM, an   | 5.  UNFAIR COMPETITION;
23 individual; ALANA NAKATA, an        | 6.  CONVERSION;
   individual; STEPHEN TSANG, an       | 7.  BREACH OF DUTY OF LOYALTY;
24 individual; GUANGYUANG ZHAO, an     | 8.  BREACH OF FIDUCIARY DUTY;
   individual; GNOEM SYSTEMS, INC., a  | 9.  BREACH OF CONTRACT;
25 corporation; AIXTRON AG, a corporation; | 10. TORTIOUS BREACH OF
   EPISIL TECHNOLOGIES, INC; a         |     CONTRACT; and
26 corporation; HERMES – EPITEK, a     | 11. INTENTIONAL INTERFERENCE
   corporation; and EFFICIENT POWER    |     WITH CONTRACT RELATIONS
27 CONVERSION CORPORATION, a           |
   corporation;                       | DEMAND FOR JURY TRIAL
28                Defendants.         |

COPY

1    Plaintiff International Rectifier Corporation ("IR" or "International Rectifier"

2  or the "Company") brings the following claims against Alex Lidow, Robert Beach,

3  Jianjuan "Joe" Cao, David Tam, Alana Nakata, Stephen Tsang, Guangyuang Zhao,

4  GNOEM, Aixtron AG, Episil Technologies, Inc., Hermes – Epitek Corporation, GNOEM

5  Systems, Inc. and Efficient Power Conversion Corporation ("EPCC") as set forth herein.

6

7                                    **I.**

8                            **INTRODUCTION**

9

10    1.    IR is a pioneer and world leader in advanced power management technology.

11  This Complaint seeks to halt Defendants' ongoing scheme and conspiracy to unlawfully

12  and unfairly compete against IR, by stealing the Company's own proprietary information,

13  trade secrets, intellectual property ("IP") and technology and using it to compete against

14  IR.  While at IR, Alex Lidow ("Lidow"), the former CEO and putative head of research

15  and development, knew of and had been involved in the development of revolutionary

16  market breaking Gallium Nitride ("GaN") technology, which is one of the newest

17  developments in the power management and controls industry.  Lidow later approached

18  various co-defendants with a plan to illicitly expropriate IR's secret GaN research

19  information and other relevant proprietary information, trade secrets, intellectual property

20  ("IP") and technology.

21

22    2.    Thereafter, Lidow and his co-defendants formed an enterprise by utilizing a

23  new company first designated as "Undercover Company," and then publicly filed and

24  named EPCC.  This enterprise illegally transferred IR's proprietary information, trade

25  secrets, IP, technology and other property pertaining and related to the GaN technology to

26  EPCC.  Defendant Lidow and his co-defendants engaged in "corporate raiding" of IR's

27  key GaN research and development personnel.  Defendants Aixtron AG, Episil

28  Technologies, Inc., and Hermes – Epitek, historically business collaborators with IR,

1   secretly encouraged and cooperated with the Defendants' attack on IR.

2

3          3.     By engaging in the acts alleged in this Complaint, Defendants, among other

4   things, have violated the Racketeer Influenced and Corrupt Organizations Act, and have

5   engaged in mail fraud, wire fraud and the receipt and transportation of stolen property,

6   misappropriation of trade secrets and unfair competition.  Moreover, through their

7   elaborate fraudulent scheme to rob International Rectifier of its intellectual property and

8   personnel, Defendants have breached their fiduciary duties and duties of loyalty to IR,

9   breached lawful confidentiality and nondisclosure agreements, committed common law

10  fraud, and unlawfully converted property owned by IR.  In bringing this action before the

11  court, IR seeks an order preliminarily and permanently enjoining Defendants from further

12  unlawful conduct and a judgment awarding actual, treble, and punitive damages, as well as

13  costs and attorneys' fees.

14

15                  **III.**

16        **JURISDICTION AND VENUE**

17

18         4.     This Court has jurisdiction over the claims for relief arising under the

19  Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961, *et seq.*,

20  pursuant to 18 U.S.C. § 1964(c).  Original jurisdiction is proper pursuant to 28 U.S.C. §

21  1337, and supplemental jurisdiction exists over the state law causes of action pursuant to

22  28 U.S.C. § 1367(a).

23

24         5.     Venue is proper in this Court under 28 U.S.C. § 1391(b) because a

25  substantial part of the events giving rise to the claims asserted herein occurred within this

26  judicial district, in that the acts of mail and wire fraud, transportation and receipt of stolen

27  property, misappropriation of trade secrets, unfair competition, conversion, conspiracy,

28  breach of duty of loyalty, breach fiduciary duty and fraud occurred within this judicial

1  district.  Venue is also proper in the Central District of California under 18 U.S.C. §§

2  1381(b) and 1965(a) because Defendants Lidow, Beach, Cao, Tam, Nakata, Zhao, and

3  EPCC reside in this judicial district and all Defendants transact business within this

4  judicial district.

5

6                                           **II.**

7                                    **THE PARTIES**

8        6.      IR, based in El Segundo, California, is a pioneer and world leader in

9  advanced power management technology, from digital, analog and mixed-signal Integrated

10  Circuits to advanced circuit devices, power systems and components.  The world's leading

11  manufacturers of computers, appliances, automobiles, consumer electronics and defense

12  systems rely on IR technology to drive the performance and efficiency of their products.

13  The Company, which has been a public company for over 50 years, currently has annual

14  sales of approximately $1 billion dollars.

15

16       7.      Defendant Alex Lidow ("Lidow") is an individual residing in Marina del

17  Rey, California.  Lidow is a former member of the Board of Directors ("Board") and

18  former Chief Executive Officer ("CEO") of IR.

19

20       8.      Defendant Robert Beach ("Beach") is an individual residing in La Crescenta,

21  California.  Beach is a former employee of IR.

22

23       9.      Defendant Jianjuan "Joe" Cao ("Cao") is an individual residing in Torrance,

24  California.  Cao is a former employee of IR.

25

26       10.     Defendant David Tam ("Tam") is an individual residing in Manhattan Beach,

27  California.  Tam is a former employee of IR.

28

11.     Defendant Alana Nakata ("Nakata") is an individual residing in Redondo Beach, California.  Nakata is a former employee of IR.

12.     Defendant Stephen Tsang ("Tsang") is an individual believed to reside in Hong Kong.  Tsang is a former employee of IR.

13.     Defendant Guangyuang Zhao ("Zhao") is an individual residing in Torrance, California.  Zhao is a former employee of IR.

14.     All Defendants who were previously employed at IR signed confidentiality and/or nondisclosure agreements, obligating them to devote their work-related efforts to their duties at IR, to relinquish any interest in patentable intellectual property developed during their employment at IR, to protect and preserve IR's information, trade secrets, IP and technology, and further agreeing that those obligations continued beyond the termination of their employment with IR.

15.     Defendant GNOEM is a California corporation with its principal place of business at Bolder Creek, California.

16.     Defendant EPCC is a Delaware corporation with offices in El Segundo, California.  Defendants Lidow, Beach, and Cao are directors of EPCC.

17.     Defendant Aixtron AG ("Aixtron") is a German corporation with offices in the United States and is a close collaborator of IR's, specifically with regard to IR's GaN research and development efforts.

18.     Defendant Episil Technologies, Inc. ("Episil") is a Taiwan corporation and a business collaborator with IR which produces silicon wafers for semiconductor products.

19.   Defendant Hermes – Epitek Corporation ("Hermes – Epitek") is a Taiwan corporation with offices in Sunnyvale, California, and a business collaborator with IR which is a importer/ exporter and wholesaler of semiconductor devices.

## IV.
## **FACTUAL BACKGROUND**

20.   IR was founded in 1947 by Alex Lidow's family.  From 1994 until his resignation in October 2007, Lidow was a member of IR's Board.  From 1999 until his resignation in October 2007, Lidow was the Company's Chief Executive Officer ("CEO").

21.   In 2007, the Audit Committee of IR's Board (the "Committee") retained independent outside legal counsel to conduct an internal investigation into allegations of financial misconduct and abuse.  Lidow was placed on administrative leave in August of 2007.  On October 2, 2007, at the request of the Board, Lidow resigned both as IR's CEO and as a Director.  Lidow and IR entered into a Separation Agreement pursuant to which Lidow agreed to return all IR property and to provide IR a copy of all Company information which was on his personal laptop.  The Separation Agreement provided, in its relevant part, that Lidow's Patent Policy and Conflict of Interest Policy remain in full force and effect.  The Separation Agreement contains no release of claims by either Lidow or IR.

22.   Lidow initiated a secret plan to set up and run a separate, competing company in contravention of his employment and fiduciary duties to IR.  Lidow first denominated his new company as "Undercover Company."  Lidow later incorporated and renamed this company EPCC.

**The Beginnings**

23.   In November 2006, the Committee became concerned about alleged problems

INTERNATIONAL RECTIFIER COMPLAINT

1  within the organization.  Glass, Lewis & Co., an analyst of public companies, had issued a

2  report questioning a number of IR's financial activities, policies and procedures.  In

3  response, the Committee retained independent outside legal counsel and asked them to

4  conduct a comprehensive internal inquiry.

6      24.    Recognizing he could not stop the Committee's investigation and that it was

7  likely that his longevity as CEO would be affected, Lidow had to consider other options.

9  **Early Involvement with GaN**

11     25.    Early on, Lidow recognized that GaN technology could be the "future" of

12 power electronics and control technology.  In 2003, Lidow sought to acquire a company

13 known as GaNrose and recruited Beach, one of GaNrose's founding associates.  IR

14 acquired GaNrose because Beach and his associates supposedly had exceptional expertise

15 in the GaN technology field.  IR acquired GaNrose for a sum in excess of $800,000, at the

16 express direction of Lidow.

18     26.    Between March and September 2003, around the same period of time that IR

19 was negotiating the purchase of GaNrose and the hiring of its partners, Beach and others

20 incorporated GNOEM, another GaN related company.  According to GNOEM's website,

21 the company's purpose is  "working towards solutions that utilize the advantages of GaN."

22 See http://www.gnoem.com.  GNOEM's business plans suggest that, among other things,

23 the company was developing a "µsaw" and endeavoring to develop the capability to

24 produce Epi (epitaxial) wafers for use in GaN power technology.

26     27.    Beach was hired by IR in late September 2003.  As terms of his employment

27 at IR, Beach executed documents requiring him to devote all of his efforts to his duties at

28 IR, to relinquish any interest in patentable intellectual property developed during his

1  employment, and to protect and preserve IR's information, trade secrets, IP, and

2  technology.

3

4       28.    Beach ran GNOEM during his employment with IR in spite of the

5  nondisclosure agreements he executed requiring his efforts be devoted fully to IR. Beach

6  did not disclose his interest in this or any other company when he was hired by IR at the

7  end of September 2003.  Moreover, at or about that time, Beach registered the domain

8  name www.gnoem.com.  IR was unaware of the creation of GNOEM, the domain name, or

9  the diversion of technology to GNOEM.

10

11 **The Plan**

12

13      29.    As CEO and putative head of research and development at IR, and an expert

14 himself on power electronic and control technologies, Lidow knew that GaN technology

15 could be the revolutionary, market-breaking technology in the power management field.

16 He was aware of and had personally been involved in IR's GaN research.   In fact, Lidow

17 oversaw IR's expenditure of more than $60 million towards the development of GaN

18 power electronic and control technology as the next important advancement in the power

19 management and controls industry.

20

21      30.    Lidow also knew that IR maintained the research and development of GaN in

22 great secrecy to ensure that it would become an early entrant into GaN power electronic

23 and control technology.  In fact, Mike Briere, the Company's Chief Technology Officer

24 ("CTO") and Head of Research and Development until December 2007, instructed

25 members of the GaN research and development group, known by the pseudonym "CSC",

26 to maintain a very low profile within the Company.  Briere reported directly to Lidow.

27 IR's GaN research efforts were intentionally kept secret from most of IR's personnel and

28 from the outside world to protect some of its most valuable assets, information, trade

1    secrets, IP and technology.

2

3         31.    In or about the summer of 2007, Lidow forestalled a planned public

4    disclosure of the Company's advancements in GaN research.  As a result, IR's involvement

5    and successes in the field of GaN research and development remained under wraps and

6    essentially unknown to both the outside power management business world and most of

7    IR's own employees.

8

9         32.    In the early fall of 2007, Lidow separately approached personnel in the

10   Company's GaN research and development group, and senior officers involved in sales and

11   distribution of the Company's products.  Lidow presented them with his plan to illicitly

12   expropriate IR's GaN research findings, and all other relevant proprietary information,

13   trade secrets, IP and technology, and to illegally convert it to the use and benefit of a new

14   company, EPCC, which would directly compete with and operate to the detriment of IR.

15

16        33.    In the early fall of 2007, Lidow contacted a former senior IR employee to

17   obtain the contact details for Archie Hwang.  Hwang was the founder and principal of

18   Hermes-Epitek and of Episil, an "epitaxial" foundry in Taiwan, which makes "wafers" for

19   the power management and control industry.  Episil and Hermes-Epitek are business

20   collaborators of IR; Episil makes wafers specifically for IR's research and development

21   group.

22

23        34.    Starting on or about October 11, 2007, Lidow formalized his plan to set up a

24   company to compete with IR in the GaN technology market by preparing a business plan

25   which essentially mirrored IR's plans for its GaN research and development.  He entitled it

26   "Undercover Company."  Lidow secretly shared this business plan with Tam, Beach and

27   Cao.

28

35.     In early October 2007, Tam, with David Yap and other senior IR employees, secretly produced and presented a business plan to Lidow describing another breakaway entity from IR that was to be directly linked to "Undercover Company." The business plan was entitled "SEED2," with the "D2" standing for the two Davids (Tam and Yap). Tsang, IR's Head of Sales for the Asia Pacific region until April of 2008, was a close associate of Tam and was also involved in the plans for the SEED2 entity.

36.     During October 2007, Lidow aggressively recruited Beach and Cao for "Undercover Company." Lidow specifically sought them out because they were both senior members of IR's GaN research and development group, CSC. Additionally, Cao was designated by CTO Briere to be the sole point of contact between the GaN research efforts in El Segundo and a small but highly skilled group of IR engineers working on GaN research in Minnesota, which IR had acquired from a company known as APA Enterprises, Inc. in March of 2006.

37.     In mid-October 2007, Lidow hosted a "partners meeting", at Lidow's home, attended by Beach, Cao, Nakata, Tam and David Yap to discuss the business plan of "Undercover Company."

38.     The Minnesota group, led by Ron Birkhahn, became a key Epi (epitaxial) growing facility for IR's GaN research. The group utilized both a Veeco D180, and later an Aixtron G4 reactor for that process. In November 2007, Beach asked Birkhahn to leave IR and join the new start-up company (Undercover Company/EPCC) in which Beach was involved. Birkhahn rebuffed Beach's proposition.

39.     Lidow also recruited Cao, whose wife, Yaping Ma, was responsible for mask development and control in IR's El Segundo GaN research project. Yaping Ma had access to some of the most critical components of IR's GaN research and development project.

40.     In October 2007, Beach and Cao secretly decided to leave IR and join Lidow's new company.  In mid-October they announced their intention to leave.  CTO Briere, who was Beach and Cao's ultimate supervisor, became aware of their imminent departure and instructed their immediate supervisor, Rick Sivan, to investigate what information, trade secrets, IP and technology to which they had access, and to determine what they were working on just prior to their departure.

41.     Rick Sivan, IR's Vice President of Research and Development, conducted exit interviews with Beach and Cao, specifically admonishing them to abide by the confidentiality and nondisclosure agreements and other related obligations they had agreed to as IR employees, particularly with regard to the Company's confidential information, trade secrets, IP and technology.

42.     Notwithstanding these obligations and his supervisor's admonitions, Beach, downloaded and sent files that contained IR's GaN information to his third party server registered as www.gnoem.com at GNOEM, on October 16 and, again, on October 26, 2007.  Beach's and Cao's last day of employment with IR was October 30, 2007.

43.     On October 30, 2007, Beach and Cao formally joined forces with Lidow. That same day, Lidow incorporated "Undercover Company" in Delaware under the name Efficient Power Conversion Corporation or EPCC.  The directors of EPCC are Lidow, Beach, and Cao.  The offices of EPCC are located at 400 Continental Boulevard, Suite 600, El Segundo, California, just blocks away from IR's headquarters.

44.     Lidow also recruited Zhao, a Chinese national whom IR had sponsored for a H1-B Visa to allow him to work in the United States.  Zhao worked in the Company's GaN research group in Minnesota and conducted key GaN research using the Aixtron G4 and Vecco D180 reactors.

45.     In January 2008, Lidow, as head of EPCC, filed an application with the United States Immigration Service to amend Zhao's H1-B Visa to name EPCC as the sponsoring agent.  Lidow's application outlined his intention to employ Zhao at EPCC in a remarkably similar role as the one Zhao had at IR.  Zhao, who was still employed by IR during the time Lidow filed the amended visa application, did not resign from IR until February 16, 2008.

46.     Another GaN technology expert, Nakata, while employed at IR, tested and evaluated new wafers and product designs and, thus, has valuable GaN technology skills.  On information and belief, Defendant Nakata was solicited to join EPCC.  On or about February 1, 2008, Lidow formally hired Nakata away from IR to work at EPCC.

47.     Lidow also hired Audrey Downes, a former senior administrative assistant at IR, immediately after she left the Company.

**Recruitment of IR Business Collaborators**

48.     In January 2008, IR learned that Lam Research Corporation, the Company's "etch" supplier, had been contacted by Cao in his capacity as an employee of EPCC.  Cao had requested that Lam supply him with etching specifications essentially identical to those used by IR for his use at Episil, a foundry in Taiwan.

49.     Shortly thereafter, certain Defendants made numerous trips to Episil's factories.  For example, on or about November 19 and 20, 2007, Beach, Cao, and Lidow traveled to Taiwan to meet with Archie Hwang at Episil.  On or about November 26, 2007, Lidow communicated with personnel at Hermes-Epitek, as a follow-up to the meeting with Archie Hwang and others at Episil.  Hermes-Epitek is the companion company of Episil, providing professional services and training for semi-conductor and high-tech processes

-11-

1  and technology.  On or about March of 2008, Cao again traveled to Taiwan to meet at

2  Episil.  On or about May 5, 2008, Lidow, Beach, Nakata, Cao and Zhao traveled to Taiwan

3  to meet at Episil.

4

5      50.    Defendants also met and worked with Defendant Aixtron, another IR business

6  collaborator.  In or about June of 2008, Zhao met with Yulmas Dimke in Aachen,

7  Germany, at Aixtron's premises.  Dimke is employed by Aixtron.  IR personnel had closely

8  collaborated with Dimke in their GaN research and development efforts, and Dimke

9  regularly visited IR's Minnesota GaN group.  Dimke was responsible for the installation

10  and trial runs of IR's Aixtron G4 Reactor.  As a result, he had access at one time or another

11  to virtually all of IR's GaN-related information, trade secrets, IP, and technology.  As part

12  of the scheme, the Defendants at EPCC sought out and utilized Aixtron as its Epi

13  (epitaxial) grower, just as IR does and did for its GaN effort.

14

15      51.    While employed at IR in June 2008, Tam traveled to Hong Kong to meet with

16  Tsang.  Thereafter, in July 2008, Tam traveled to Tel Aviv and Hong Kong, purportedly on

17  IR business.  Instead, Tam met with GaN scientists in furtherance of the scheme's business

18  plans.  Defendant Tam billed IR for the travel expenses he incurred.

19

20      52.    Similarly, various Defendants sought out and engaged in additional

21  collaborations with entities that have ongoing business relationships with IR for similar or

22  identical purposes.  These companies include: Nitronix, Wafer Works, Samco, Promex,

23  Soitec and Picogiga.  In addition, like IR's GaN Research and Development group, EPCC

24  has used facilities at the University of California, Los Angeles for "gate stack etching," and

25  other procedures critical to GaN research and development.

26

27      53.    IR was damaged by Defendants' actions.  Among other things, IR's harm

28  includes the unauthorized taking and conversion of its information, trade secrets,

INTERNATIONAL RECTIFIER COMPLAINT

1  intellectual property, and technology by the Defendants without permission or license, and

2  its use, (1) in a manner intended to undermine and destroy IR's leadership in GaN power

3  electronics and control technology, (2) in a manner inconsistent with IR's choices as to

4  with whom it would share its highly confidential proprietary information, trade secrets, IP

5  and technology, (3) in a manner inconsistent with and adverse to IR's business interests

6  and plans to exploit its GaN research and development in the market, and (4) in a manner

7  which significantly diminished the value of IR's $60 million-plus expenditure on GaN

8  research and its related efforts to maintain that research project and its results confidential.

9

10  54.    Further, by engaging in their unlawful conduct, Defendants caused IR to lose

11  much of the value of its multi-million dollar research expenditures on both GaN-related

12  projects and personnel.  In addition to the losses from the theft of its information, trade

13  secrets, IP and technology, IR was damaged and harmed because Defendants sought out

14  and prevailed upon IR's highly trained personnel to abandon IR in favor of EPCC in order

15  to undermine and destroy IR's existing capability to do GaN power control and electronics

16  technology research and development, and to create, manufacture and sell new products in

17  the power management industry.  IR has been damaged and harmed by having to bear the

18  costs and expense associated with the loss of these personnel, their expertise and

19  experience, and the loss of continuity of their efforts in support of IR's GaN research and

20  development and IR's first, to, market advantage for its GaN technology.

21

22  ## V.

23  ## FIRST CLAIM FOR RELIEF

24  (Violation of the Racketeer Influenced and Corrupt Organizations Act,

25  18 U.S.C. § 1962(c) Against all Defendants excluding GNOEM)

26

27  55.    IR re-alleges and incorporates by reference herein, as if set forth in

28  full, the allegations set forth above in all paragraphs 1 through 54 of this Complaint.

1    56.   Defendants Lidow, Beach, Cao, Tam, Nakata, Tsang, Zhao, Aixtron,

2    Episil, Hermes – Epitek and EPCC are capable of holding a legal or beneficial interest in

3    property and are, therefore, each a "person" within the meaning of 18 U.S.C. § 1961(3).

4

5    *The RICO Enterprise*

6    57.   Defendants Lidow, Beach, Cao, Tam, Nakata, Tsang, Zhao, Aixtron,

7    Episil, Hermes –Epitek and EPCC, acting in concert, comprise an association in fact,

8    referred to herein as the "*Lidow Asset Theft Enterprise*."

9

10   58.   The continuing association formed by these parties constitutes a RICO

11   enterprise within the meaning of 18 U.S.C. § 1961(4).

12

13   *Pattern of Racketeering Activity*

14   59.   From in or about October 2007, and continuing to and through the

15   present,  Defendants Lidow, Beach, Cao, Tam, Nakata, Tsang, Zhao, Aixtron, Episil,

16   Hermes –Epitek and EPCC, acting in concert, have unlawfully, knowingly, and

17   intentionally conducted and participated, and continue to conduct and participate, in the

18   affairs of the *Lidow Asset Theft Enterprise*, through a pattern of racketeering activity that

19   includes devising and intending to devise and execute a scheme and artifice to defraud and

20   to obtain money or property by means of false and fraudulent pretenses, representations,

21   and promises, through the use of the U.S. mails, private and commercial interstate carriers,

22   through the use of interstate wires and radio communications, and travel in interstate and

23   foreign commerce in possession of property obtained by theft, conversion or fraud, having

24   a value of more than $5,000.

25

26   60.   This racketeering activity was performed by Lidow, Beach, Cao, Tam,

27   Nakata, Tsang, Zhao, Aixtron, Episil, Hermes –Epitek and EPCC in furtherance of their

28   scheme: (1) to obtain and convert wrongfully and unlawfully the highly sensitive and

-14-

1  proprietary information, trade secrets, IP and technology of IR; (2) to wrongfully and

2  unlawfully use and exploit the proprietary information, trade secrets, IP and technology of

3  IR to obtain dominance in the GaN technology market by illegally using IR's own

4  information, trade secrets, IP, and technology against it; (3) to deprive IR of the use and

5  enjoyment of its proprietary information, trade secrets, IP and technology; and (4) to

6  deprive IR of sales and market position and power it otherwise could have attained were it

7  not for Defendants' wrongful and unlawful use of stolen information, trade secrets, IP and

8  technology.

9

10        61.    Defendants have violated 18 U.S.C. § 1962(c), by conducting or

11  participating in the conduct of the enterprise's affairs through a pattern of racketeering

12  activity.

13

14        *Use of the U.S. Mails, Private Or Commercial Interstate Carriers,*
          *And Interstate Wires*

15

16        62.    Defendants acting in concert, have unlawfully, willfully, and

17  knowingly used the U.S. mails, private or commercial interstate carriers, and interstate

18  wires in furtherance of their scheme and artifice to defraud IR and to deprive it of its

19  property rights in proprietary and trade secret information, including, but not limited to, the

20  following:

21

22        63.    In or around the summer of 2007, Lidow was aware that IR was going

23  to publicly disclose a breakthrough in its GaN research, utilized email and interstate wire

24  communications to direct that the public disclosure be forestalled and that IR not publicly

25  identify the status or success of its GaN-related activities.

26

27        64.    In the fall of 2007, Lidow and his co-defendants utilized email and

28  interstate wire communications while planning to siphon off IR's information, trade

-15-

secrets, and technology, and to identify companies with which they could work and continue to work on GaN technology, particularly those companies which had been already working with IR and had access to IR's information, trade secrets and technology, usually through Non-Disclosure Agreements ("NDA"s).

65.     In or about October 2007, Lidow used email and interstate wire communications to recruit IR employees Tam, Cao, Beach and others to join his new entity, "Undercover Company," in unlawful competition with IR.

66.     In the early fall of 2007, Defendants used email and interstate wire communications to recruit other IR personnel, including, but not limited to, IR employee Ron Birkhahn to join "Undercover Company", in unlawful competition with IR.  On information and belief, Defendants continue to use email and interstate wire communications to recruit other IR personnel to join EPCC.

67.     On or about October 16, 2007, while employed by IR, Beach utilized email and interstate wire communications to send files that contained the Company's GaN information to his third party server registered as www.gnoem.com.

68.     On or about October 26, 2007, while employed by IR, Beach utilized email and interstate wire communications to send files that contained the Company's propriety information, trade secrets, IP, and technology to his third party server registered as www.gnoem.com.

69.     On or about October 26, 2007, Lidow utilized email and interstate wire communications and informed IR employees Beach and Cao that he had incorporated EPCC, in furtherance of their scheme and enterprise.

-16-

70. On information and belief, in or about the fall and winter of 2007 and continuing to the present, Defendants utilized email and interstate wire communications to communicate with various suppliers of IR, to wrongfully obtain and attempt to obtain highly sensitive information regarding the Company's GaN research efforts, information that constituted confidential and proprietary information, trade secrets, IP and technology, and which was protected by Non-Disclosure Agreements ("NDAs").

71. On or about May 2008, Lidow and Nakata corresponded by email and utilized interstate wire communications to plan their trip to Taiwan to meet with representatives of Episil, the purpose of which was to wrongfully obtain and attempt to obtain highly sensitive information regarding the Company's GaN research efforts, information that constituted confidential and proprietary information, trade secrets, IP and technology, and which was protected by NDAs.

72. On information and belief, Lidow, Beach, Cao, and Nakata continue to correspond by email and utilize interstate wire communications to plan trips to Taiwan and Germany to meet with co-defendants Episil, Hermes –Epitek and Aixtron, to wrongfully obtain and attempt to obtain highly sensitive information regarding the Company's GaN research efforts, information that constituted confidential and proprietary information, trade secrets, IP and technology, and which was protected by NDAs.

*Interstate Transportation in Connection with the Receipt, Possession, Concealment and Use of Property Obtained By Theft, Conversion, Or Fraud*

73. In or about May 2008, Cao, Lidow, Beach, Nakata and Zhao traveled to Taiwan by interstate and international carrier to meet with representatives of Episil and Hermes –Epitek, to wrongfully obtain and attempt to obtain highly sensitive information regarding the Company's GaN research efforts, information that constituted confidential and proprietary information, trade secrets, IP and technology, and which was protected by

1    NDAs.

2

3            74.    In or about June 2008, Zhao traveled to the facilities of Aixtron in

4    Germany by interstate and international carrier to meet with Aixtron employee Yulmas

5    Dimke to wrongfully obtain and attempt to obtain highly sensitive information regarding

6    the Company's GaN research efforts, information that constituted confidential and

7    proprietary information, trade secrets, IP and technology, and which was protected by

8    NDAs.

9

10           75.    In or about May and June 2008, Zhao, Cao and Nakata traveled to

11   Taiwan by interstate and international carrier to meet with Hermes –Epitek and Episil.  On

12   information and belief, Beach and Zhao thereafter traveled to Aixtron in Germany, and to

13   Hermes-Epitek and Episil in Taiwan.  Throughout this period  they possessed, concealed

14   and used sensitive information, trade secrets, IP and technology with a value in excess of

15   $5,000, belonging to IR, which had been illegally taken and converted as part of the

16   racketeering activity of the *Lidow Asset Theft Enterprise.*

17

18           76.    On information and belief, Defendants continue to travel to Aixtron

19   and Episil/ Hermes –Epitek in Germany and Taiwan, respectively, while possessing,

20   concealing and using sensitive information, trade secrets, IP and technology, with a value

21   in excess of $5,000, belonging to IR, which had been illegally taken and converted as part

22   of the racketeering activity of the *Lidow Asset Theft Enterprise.*

23

24           77.    Defendants, acting in concert, have unlawfully, knowingly, and

25   intentionally engaged in two or more acts indictable under the Federal Mail Fraud Statute,

26   18 U.S.C. § 1341, the Federal Wire Fraud Statute, 18 U.S.C. § 1343, and the Federal

27   Interstate Receipt of Stolen Property Statute, 18 U.S.C. § 2315, and have therefore

28   unlawfully, fraudulently, and intentionally engaged in predicate acts of racketeering within

-18-

1   the meaning of 18 U.S.C. § 1961(1)(B).

2

3       78.     As a direct and proximate result of the Defendants' acting in concert

4   and their willful and unlawful participation in and conduct of the *Lidow Asset Theft*

5   *Enterprise*, through a pattern of racketeering in violation of 18 U.S.C. § 1962(c), IR has

6   been injured in its business and property, as described in paragraphs 52 and 53 above.

7

8       79.     Pursuant to 18 U.S.C. § 1964, IR is entitled to damages, including

9   treble damages, for the injuries, and is entitled to costs of the suit, including reasonable

10  attorney's fees.

11

12      80.     IR seeks damages in an amount to be proven, as well as attorneys' fees

13  and costs to the extent allowed by law.

14

15              **SECOND CLAIM FOR RELIEF**

16      (Violation of the Racketeer Influenced and Corrupt Organizations Act,

17          18 U.S.C. § 1962(d) Against All Defendants excluding GNOEM)

18

19      81.     IR re-alleges and incorporates by reference herein, as if set forth in

20  full, the allegations set forth above in all paragraphs 1 through 80 of this Complaint.

21

22      82.     Defendants Lidow, Beach, Cao, Tam, Nakata, Tsang, Zhao, Aixtron,

23  Episil, Hermes –Epitek and EPCC, intentionally acting in concert, have unlawfully,

24  fraudulently, and intentionally conspired together to violate 18 U.S.C. § 1962(c).

25

26      83.     Specifically, Defendants acting in concert, have unlawfully,

27  fraudulently, and intentionally conspired together to (a) obtain and misuse IR's proprietary

28  information, trade secrets, intellectual property and technology to gain an unfair business

-19-

1  advantage over IR; (b) misuse such to dominate the market for power management

2  technology, and (c) conduct other illegal activities in furtherance of their scheme to

3  defraud IR.

4

5          84.  As a direct and proximate result of Defendants' wrongful and

6  unlawful actions described herein, IR has sustained actual damages as described in

7  paragraphs 52 and 53 above, and will continue to incur and sustain such damage in the

8  future on an ongoing and continuing basis.

9

10                 **THIRD CLAIM FOR RELIEF**

11        (Fraud and Deceit Pursuant to California Civil Code § 1709 *et seq.*

12                  Against All Defendants)

13

14      85.  IR re-alleges and incorporates by reference herein, as if set forth in full, the

15  allegations set forth above in all paragraphs 1 through 54 of this Complaint.

16

17      86.  Lidow, Beach, Cao, Tam, Nakata, Tsang, Zhao, GNOEM, Aixtron, Episil,

18  Hermes –Epitek, and EPCC acting in concert unlawfully, willfully, and knowingly took

19  specific actions in furtherance of their scheme and artifice to defraud IR and to deprive IR

20  of its property rights in proprietary and information, trade secrets, IP and technology.

21

22      87.  Lidow, Tam and David Yap knowingly and intentionally concealed their

23  plans from IR to illegally misappropriate the Company's information, trade secrets, IP and

24  technology and transfer such information to their competitor company, originally entitled

25  "Undercover Company" and later incorporated as EPCC so that Defendants could develop,

26  market and sell IR's GaN technology through EPCC.  Defendant Tam knowingly and

27  intentionally concealed from IR the "SEED2" business plan to form another breakaway

28  entity to be directly linked to "Undercover Company."

-20-

88. Lidow knowingly and intentionally concealed his plans from IR to solicit IR's most skilled and knowledgeable GaN technology personnel to leave IR and join his newly formed company, EPCC.

89. In spite of agreements in which Beach was obliged to devote all of his efforts to his work at IR, and to relinquish any interest in patentable IP developed during his employment, and to protect and preserve IR's information, trade secrets, IP and technology, Beach knowingly and intentionally concealed from IR his formation of a second company GNOEM, which also develops GaN technology.  Beach also knowingly and intentionally concealed from IR that the fact that he registered the domain name www.gnoem.com while employed at IR.

90. Moreover, in spite of receiving admonitions from Rick Sivan to abide by the confidentiality and nondisclosure agreements and other obligations he had to agreed to as an IR employee, Beach knowingly and intentionally concealed the fact that he illegally misappropriated IR's information, trade secrets, IP and technology and transferred such information to EPCC, for Defendants' own use and to the detriment of IR.  Specifically, Beach knowingly and intentionally concealed from IR the fact that he downloaded and sent files that contained IR's information, trade secrets, IP and technology to his third party server registered at www.gnoem.com at GNOEM, on October 16 and, again, on October 26, 2007.

91. In spite of nondisclosure and confidentiality agreements which they executed as IR employees obligating them to devote all efforts to their work at IR, to relinquish any interest in patentable IP developed during their employment, and to protect and preserve IR's information, trade secrets, IP and technology, Tam, Nakata, Tsang and Zhao knowingly and intentionally concealed from IR their intention to leave IR and to illegally transfer IR's information, trade secrets, IP and technology to EPCC.

92.     Aixtron, Episil and Hermes –Epitek, business collaborators of IR who had access to IR's GaN- related information, trade secrets, IP and technology, and had entered into NDAs with IR, knowingly and intentionally concealed from IR their efforts to encourage Lidow, Beach and Cao to illegally transfer IR's information, trade secrets, IP and technology to EPCC.  Aixtron and Episil also knowingly and intentionally concealed from IR their work with co-Defendants to develop virtually identical GaN products as those being developed by IR.

93.     GNOEM knowingly and intentionally concealed from IR the efforts of its directors and employees to illegal transfer IR's information, trade secrets, IP and technology to GNOEM/ EPCC.

94.     EPCC knowingly and intentionally concealed from IR the efforts of its directors and employees to illegal transfer IR's information, trade secrets, IP and technology to EPCC.  EPCC also knowingly and intentionally concealed from IR its work with Defendants to develop virtually identical GaN products as those being developed by IR.

95.     By virtue of their employment relationship with IR, Lidow, Beach, Cao, Tam, Nakata, Tsang and Zhao owed IR a duty to disclose any misappropriation, conversion, or misuse of its information, trade secrets, IP or technology.  At all times however, the above named Defendants knowingly and intentionally concealed their intentions to illegally transfer IR's information, trade secrets, IP and technology to EPCC and to leave IR's employment to work at EPCC.

96.     Similarly, by virtue of their business relationships with IR and access to its confidential information, Aixtron, Hermes –Epitek and Episil owed IR a duty to disclose any misappropriation, conversion, or misuse of its information, trade secrets, IP or

technology.  At all times however, Aixtron, Hermes –Epitek and Episil knowingly and intentionally concealed (a) their efforts to encourage co-Defendants to raid IR of its confidential information, trade secrets, IP and technology and (b) formation of EPCC and (c) their work with Defendants to develop virtually identical GaN products as those of IR in spite of their NDAs.

97.    IR did not know of the true intentions of Lidow, Beach, Cao, Tam, Nakata, Tsang and Zhao to raid its technology to give it EPCC and GNOEM.  Rather, IR, relying on the fact that these Defendants executed confidentiality agreements and the expectation that they were loyal employees and officers to the company, provided these Defendants with access to it is most valuable GaN information, trade secrets, IP and technology.  Had IR known of these Defendants' true intentions, it would have immediately terminated these Defendants and denied them access to this valuable information.

98.    IR did not know of Aixtron's, Hermes –Epitek's and Episil's true intentions to encourage Defendants to raid IR's corporate assets and to work with Defendants to create virtually identical GaN products.  Rather, IR, relying on the fact that Aixtron and Episil had executed NDAs provided these Defendants with access to its most valuable GaN information, trade secrets, IP and technology.  Had IR known of these Defendants' true intentions, it would have denied them access to its valuable information.

99.    As a proximate result of the actions of Defendants, IR has sustained significant damages as described in Paragraphs 52 and 53, the amount of which will be proven at trial.

100.    As a proximate cause of the fraud and deceit of these Defendants as alleged herein, IR has suffered and will continue to suffer consequential damages in an amount according to proof, included but not limited to attorneys' fees and costs and other time and

1  money spent to recover the value of the technology and labor of which it has been

2  defrauded.

3

4    101.   Lidow, Beach, Cao, Tam, Nakata, Tsang, Zhao, GNOEM, Aixtron, Episil,

5  Hermes –Epitek and EPCC knowingly combined and conspired to defraud and deceive IR

6  as described above.   As a direct and proximate cause result of these Defendants' actions,

7  IR has suffered damages in an amount to be proven at trial.   These Defendants are jointly

8  liable for the harm they have caused to IR through their conspiracy.

9

10    102.   The actions of these Defendants, as described in the preceding paragraphs,

11  were willful, wanton, malicious, oppressive and were undertaken with the intent to defraud

12  IR.  Accordingly, Defendants' actions justify an award of exemplary and punitive damages.

13

14    103.   IR is informed and believes that these Defendants may have defrauded it of

15  other information, trade secrets, IP and/or technology, the full extent of which IR is

16  presently unaware.  IR hereby gives notice that it reserves the right to amend this

17  Complaint to include any other wrongful actions of Defendants that IR discovers in the

18  course of this lawsuit and any further damages that it has suffered as a result.

19

20                     **FOURTH CLAIM FOR RELIEF**

21          (Misappropriation of Trade Secrets -Cal. Civ. Code § 3426, *et seq.*

22                        Against All Defendants)

23

24    104.   IR re-alleges and incorporates by reference herein, as if set forth in full, the

25  allegations set forth above in all paragraphs 1 through 54 of this Complaint.

26

27    105.   IR's proprietary and confidential information, research, technology, and

28  including, but not limited to: process recipes, drawings, business plans, technology

1  development plan, epi research configurations and specifications, device structures,

2  wafers, device test and characterization methodologies integrated process flows

3  interconnect metallurgy constitute trade secrets within the meaning of Civil Code Section

4  3426.1(d).

5

6      106.   IR's GaN information, trade secrets, IP, and technology were unknown to the

7  public, and to IR's competitors.  IR derived economic value, both actual and potential,

8  from it not being known because IR, in its leading role in power management and control,

9  would continue to have an economic and business advantage as an early entrant into the

10  power device market with GaN devices.  IR's GaN technology is an entirely new form of

11  power management technology.  Once commercialized, it will revolutionize the power

12  electronics and control industry.  Thus, IR has every incentive to keep its GaN research

13  and development secret from the public and its competitors until the technology reaches a

14  more advanced stage of development.

15

16      107.   IR took significant steps towards protecting its GaN information, trade

17  secrets, IP and technology.  Specifically, IR's GaN epitaxial substrate research and

18  development group, known by the pseudonym CSC and located in Minnesota, was kept

19  secret not only from the public, but from the Company itself.   Mike Briere, the Company's

20  CTO and Head of Research and Development, strictly instructed members of CSC to

21  maintain a very low profile within the Company.  In fact, Cao was the only point of

22  contact between the Minnesota group and the rest of the GaN researchers in El Segundo,

23  California.   IR's GaN research was also marked "confidential" or "proprietary" and

24  contained in a controlled area.  Moreover, Lidow, Beach, Cao, Tam, Nakata, Tsang, and

25  Zhao signed agreements obligating them to protect IR's trade secrets and forbade the

26  unauthorized release of this information both at the inception and termination of their

27  employment.  Before Beach and Cao departed, IR supervisors explicitly admonished them

28  to abide by their agreements and other obligations as IR employees, in particular with

-25-

1  regard to IR's confidential GaN information, trade secrets, IP, and technology.

2

3      108.   IR also took significant steps towards protecting its GaN information, trade

4  secrets, IP and technology when dealing with Aixtron, Hermes –Epitek and Episil, its

5  business collaborators.  Episil, an "epitaxial" foundry in Taiwan, which makes "wafers"

6  for the power management and control industry, made wafers specifically for IR's research

7  and development.  Aixtron, among other things, provided IR with a G4 reactor, which was

8  used by IR's secret Minnesota CSC group.   Episil and Aixtron executed nondisclosure

9  agreements which forbade the unauthorized release of confidential/ proprietary

10  information.

11

12      109.   Lidow, Beach, Cao, Tam, Nakata, Tsang, and Zhao, as employees and/or

13  officers of IR, had an obligation to maintain the secrecy of IR's trade secrets and/or, at a

14  minimum, an obligation not to use information known to be IR's trade secrets for their

15  personal gain.

16

17      110.   Despite these obligations, and acting together, Lidow, Beach, Cao, Tam,

18  Nakata, Tsang, Zhao and GNOEM misappropriated IR's trade secrets, information, IP and

19  technology.  For example, Beach downloaded and expropriated files that contained IR's

20  trade secrets, and information, IP and technology to Beach's third party server at

21  www.gnoem.com at GNOEM.  By providing this information to EPCC, Defendants

22  utilized these unlawfully obtained materials to develop GaN products for their own benefit

23  and that of GNOEM and EPCC and to the detriment of IR.

24

25      111.   Additionally, Lidow, Beach, Cao, Tam, Nakata, Tsang, and Zhao acquired

26  IR's GaN information, trade secrets, IP and technology that they knew or had reason to

27  know was acquired by improper means from Aixtron, Hermes - Epitek and Episil, IR's

28  business collaborators who had executed NDAs.

1    112.   Aixtron, Hermes - Epitek and Episil misappropriated IR's GaN information,

2  trade secrets, IP and technology by sharing this information with Lidow, Beach, Cao, Tam,

3  Nakata, Tsang, and Zhao in violation of the NDAs they executed with IR.

4

5    113.   EPCC and GNOEM misappropriated IR's GaN information, trade secrets, IP

6  and technology by receiving and using such information it knew had been improperly

7  acquired by Defendants Lidow, Beach, Cao, Tam, Nakata, Tsang, Zhao, Aixtron, Hermes -

8  Epitek and Episil.

9

10    114.   By virtue of the acts and omissions of Lidow, Beach, Cao, Tam, Nakata,

11  Tsang, Zhao, GNOEM, Aixtron, Episil, Hermes - Epitek and EPCC as hereinabove

12  alleged, Defendants are guilty of actual and threatened misappropriation of IR's trade

13  secrets, including willful and malicious misappropriation, within the meaning of the

14  Uniform Trade Secrets Act, thereby entitling IR to injunctive relief and monetary relief,

15  including exemplary damages as set forth in California Civil Code §§ 3426.2 and 3426.3,

16  respectively, in an amount to be proven at trial as well as attorneys fees as set forth in

17  California Civil Code § 3426.4.

18

19    115.   Lidow, Beach, Cao, Tam, Nakata, Tsang, Zhao, GNOEM, Aixtron, Episil,

20  Hermes - Epitek and EPCC knowingly combined and conspired to misappropriate and use

21  the information, trade secrets, IP and technology of the Company.  As a direct and

22  proximate result of these Defendants' actions, IR has suffered damages in an amount to be

23  proven at trial.  These Defendants are jointly liable for the harm they have caused to IR

24  through their conspiracy.

25

26    116.   IR has no adequate remedy at law to compel Defendants to cease their

27  wrongful acts.  Unless the court grants an injunction, immediately halting the Defendants'

28  illegal conduct, IR may be compelled to prosecute a multiplicity of actions to remedy this

1 continuing unfair, unlawful, and/or fraudulent conduct.

2

3 **FIFTH CLAIM FOR RELIEF**

4 (Unfair Competition – Cal. Bus. & Prof. Code § 17200

5 Against all Defendants)

6

7 117.    IR re-alleges and incorporates by reference herein, as if set forth in full, the

8 allegations set forth above in all paragraphs 1 through 54 of this Complaint.

9

10 118.    The conduct of Lidow, Beach, Cao, Tam, Nakata, Tsang, Zhao, GNOEM,

11 Aixtron, Episil, Hermes - Epitek and EPCC, as alleged herein, constitutes an unlawful,

12 unfair, and/or fraudulent business act or practice, in violation of California Business &

13 Professions Code § 17200, et seq.  Such acts include, but are not limited to, Defendants'

14 misappropriation, use and distribution of IR's confidential GaN information, trade secrets,

15 IP and technology.

16

17 119.    As a result of Defendants' conduct, IR has suffered actual damages,

18 including out-of-pocket losses.

19

20 120.    Defendants knowingly combined and conspired to unlawfully and unfairly

21 compete against IR by misappropriating and using IR's confidential GaN information,

22 trade secrets, IP and technology.  As a direct and proximate cause result of these

23 Defendants' actions, IR has suffered damages in an amount to be proven at trial.  These

24 Defendants are jointly liable for the harm they have caused to IR through their conspiracy

25 and each Defendant personally participated in the acts alleged.

26

27 121.    IR alleges on information and belief that Lidow, Beach, Cao, Tam, Nakata,

28 Tsang, Zhao, GNOEM, Aixtron, Episil, Hermes - Epitek and EPCC are continuing to

W02-EAST:6RAS1\200126651.4                                    INTERNATIONAL RECTIFIER COMPLAINT

1  engage in acts of unfair competition to IR's detriment.  IR has no adequate remedy at law

2  to compel Defendants to cease their wrongful acts.  Unless the Court grants an injunction

3  halting the Defendants' illegal acts, IR will be compelled to prosecute a multiplicity of

4  actions to remedy this continuing unfair, unlawful and/or fraudulent conduct.

5  Accordingly, IR is entitled to injunctive relief pursuant to California Business &

6  Professions Code § 17203.

7

8  **<u>SIXTH CLAIM FOR RELIEF</u>**

9  (Conversion Against Defendants

10  Lidow, Beach, Cao, Tam, Tsang, Nakata, Zhao, GNOEM and EPCC)

11

12  122.  IR re-alleges and incorporates by reference herein, as if set forth in full, the

13  allegations set forth above in all paragraphs 1 through 54 of this Complaint.

14

15  123.  By improperly obtaining and using property owned by IR, Lidow, Beach,

16  Cao, Tam, Tsang, Nakata, Zhao, GNOEM and EPCC have converted IR's property to their

17  own benefit.

18

19  124.  The property improperly converted by Lidow, Beach, Cao, Tam, Tsang,

20  Nakata, Zhao, GNOEM and EPCC is the proprietary information, trade secrets, IP, and

21  technology of IR, more precisely defined as GaN power electronic and control technology.

22  IR had exclusive possession and control of this particular information and research

23  materials, and IR had a legitimate claim to exclusivity because it spent a substantial

24  amount of money — more than $60 million — to develop this information and research.

25

26  125.  As terms of their employment, Lidow, Beach, Cao, Tam, Tsang, Nakata and

27  Zhao executed confidentiality/ nondisclosure agreements obligating them to devote all

28  efforts to their work at IR, to relinquish any interest in patentable IP developed, and to

-29-

1  protect and preserve IR's information, trade secrets, IP and technology during and after

2  their employment at IR.  These agreements affirm IR's ownership of all information, trade

3  secrets, IP and technology developed or worked on by Defendants while employed at IR.

4

5      126.   Lidow, Beach, Cao, Tam, Tsang, Nakata and Zhao unlawfully converted IR's

6  confidential GaN information, trade secrets, IP, and technology by transferring it to EPCC

7  and GNOEM.  Defendants, among other ways, unlawfully converted this information by

8  downloading and sending files containing IR's GaN information, to a third party server

9  registered at www.gnoem.com, by taking certain wafers unique to IR's research, and by

10 transferring this information to EPCC and GNOEM for their own personal benefit and use.

11

12     127.   As a direct result of the actions of Lidow, Beach, Cao, Tam, Nakata, Zhao,

13 EPCC and GNOEM, IR has suffered damages in an amount to be proven at trial.

14

15     128.   The above actions of Lidow, Beach, Cao, Tam, Nakata, Zhao, EPCC and

16 GNOEM were willful, wanton, and malicious, and justify an award of exemplary and

17 punitive damages.

18

19     129.   Lidow, Beach, Cao, Nakata, Tam, Tsang, Zhao, GNOEM and EPCC

20 knowingly combined and conspired to unlawfully convert IR's confidential GaN

21 information, trade secrets, IP, and technology to use for their own benefit and to the

22 detriment of IR.  As a direct and proximate cause result of these Defendants' actions, IR

23 has suffered damages in an amount to be proven at trial.  These Defendants are jointly

24 liable for the harm they have caused to IR through their conspiracy.

25

26     130.   The above actions by Lidow, Beach, Cao, Tam, Nakata, Tsang, Zhao, EPCC

27 and GNOEM were willful, wanton and malicious, and justify an award of punitive

28 damages.

131.   IR is informed and believes that Defendants may have misappropriated other information and technology and converted them to their own personal use, the full extent to which IR is presently unaware.  IR hereby gives notice that it reserves the right to amend this Complaint to include any other wrongful acts of Defendants that IR discovers in the course of this legal action and any further damages that it has suffered as a result.

## SEVENTH CLAIM FOR RELIEF

(Breach of Duty of Loyalty – California Labor Code § 2860 Against Defendants Lidow, Beach, Cao, Tam, Nakata, Tsang and Zhao)

132.   IR re-alleges and incorporates by reference herein, as if set forth in full, the allegations set forth above in all paragraphs 1 through 54 of this Complaint.

133.   While working for IR, Lidow, Beach, Cao, Tam, Nakata, Tsang and Zhao as employees, officers, and/or agents of IR, each had a duty of loyalty to IR as their employer.  The duty of loyalty included, among other things, a duty not to steal or otherwise improperly obtain property owned by IR and use it for their own personal gain.

134.   Lidow, Beach, Cao, Tam, Nakata, Tsang and Zhao breached their duty of loyalty to IR by scheming to acquire and raiding IR of certain assets, including its confidential GaN proprietary information, trade secrets, IP and technology, transferring it to competitor company, EPCC, and using these assets for their own personal gain.  Among other ways, Defendants stole these assets by downloading and sending IR files to a third party server and by taking wafers unique to IR's research.

135.   Lidow, Beach, Tam, Nakata and Tsang also breached their duties of loyalty by scheming to create a new company, EPCC, which would compete directly with IR by using IR's confidential GaN information, trade secrets, IP and technology.

136.   Lidow and Beach further breached their duties of loyalty to IR by soliciting highly skilled IR GaN research and development employees to leave IR and to work at EPCC.

137.   Beach also breached his duty of loyalty to IR by secretly forming and running a second company GNOEM, which also specializes in GaN research and development, while Beach was employed at IR.

138.   Further, Tam, while employed at IR, breached his duty of loyalty to IR by traveling all over the world to exploit IR's confidential GaN information, trade secrets, IP and technology for Defendants' benefit and that of their newly formed company, EPCC. Tam billed IR for the costs of this travel, in violation of his duty of loyalty.

139.   As a direct and proximate result of Lidow, Beach, Cao, Tam, Nakata, Tsang and Zhao breaches of their duties of loyalty, IR has suffered damages in an amount to be proven at trial.

140.   Lidow, Beach, Cao, Nakata, Tsang and Zhao knowingly combined and conspired to breach their duties of loyalty owed to IR as employees and/or officers of IR. As a direct and proximate cause result of these Defendants' actions, IR has suffered damages in an amount to be proven at trial.  These Defendants are jointly liable for the harm they have caused to IR through their conspiracy.

141.   The actions of Lidow, Beach, Cao, Tam, Nakata, Tsang and Zhao were willful, wanton and malicious, and justify an award of exemplary and punitive damages.

142.   California Labor Code section 2860 provides that everything an employee acquires by virtue of his or her employment belongs to the employer, whether acquired

-32-

1  lawfully or unlawfully.  As a direct and proximate result of these Defendants' actions, IR

2  has sustained damages.  Pursuant to California Labor Code section 2860, Defendants now

3  hold in constructive trust for IR all confidential GaN information, trade secrets, IP, and

4  technology acquired through their fraudulent scheme.

### EIGHTH CLAIM FOR RELIEF

(Breach of Fiduciary Duty Against Defendants Lidow, Beach, Cao,

Tam, Nakata, Tsang and Zhao)

10       143.   IR re-alleges and incorporates by reference herein, as if set forth in full, the

11  allegations set forth above in all paragraphs 1 through 54 of this Complaint.

13       144.   Lidow, Beach, Cao, Tam, Nakata, Tsang and Zhao were among the few

14  persons at IR that had access to certain confidential and proprietary information, trade

15  secrets, IP and technology.  By virtue of the trust and confidence that IR reposed in them,

16  these Defendants each owed IR a fiduciary obligation to act at all times in the best interests

17  of the Company and to refrain from any conduct that would be adverse to IR's best

18  interests in any way and, following their employment, to continue to act as fiduciaries of

19  the confidential and proprietary information, trade secrets, IP and technology imparted to

20  them in their former capacities as IR employees and/or officers.

22       145.   In addition, as former CEO and a board member of IR, Lidow owed a duty

23  of care to IR and must serve in good faith and in a manner that is in the best interest of IR.

25       146.   Lidow, Beach, Cao, Tam, Nakata, Tsang and Zhao breached their fiduciary

26  duties to IR, by scheming to acquire and raiding IR of certain assets, including its

27  confidential GaN proprietary information, trade secrets, IP and technology, transferring it

28  to EPCC, and using these assets for their own personal gain and to the detriment of IR.

-33-

147.   Lidow, Tam and Tsang also breached their fiduciary duties by scheming to create EPCC, which would compete directly with IR by using IR's confidential GaN information, trade secrets, IP and technology to Defendants' benefit and IR's detriment.

148.   Lidow and Beach further breached their fiduciary duties to IR by soliciting highly-skilled IR GaN research and development employees to leave IR and to work at EPCC.

149.   Further, Tam, in his last days of employment at IR, breached his fiduciary duty to IR by traveling all over the world to exploit IR's confidential GaN information, trade secrets, IP and technology for Defendants' own benefit and that of their newly formed company, EPCC.  Tam billed IR for the costs of this travel in violation of his fiduciary duty.

150.   As a proximate result of these Defendants' breaches of their fiduciary duties, IR has sustained and will continue to sustain damages.  The precise nature and amount of such accrued and continuing damages is not presently known to the Company and cannot be ascertained at this time.

151.   Lidow, Beach, Cao, Tam, Nakata, Tsang, and Zhao knowingly combined and conspired to breach their fiduciary duties owed to IR as employees with access to IR's confidential information and/or as officers/ directors of IR.  As a direct and proximate cause result of these Defendants' actions, IR has suffered damages in an amount to be proven at trial.  These Defendants are jointly liable for the harm they have caused to IR through their conspiracy.

152.   The actions of Lidow, Beach, Cao, Tam, Nakata, Tsang and Zhao were willful, wanton and malicious, and justify an award of exemplary and punitive damages.

-34-

1

## **NINTH CLAIM FOR RELIEF**

2       (Breach of Contract Against Defendants Lidow, Beach, Cao, Tam,

3           Nakata, Tsang, Zhao, Aixtron, Hermes - Epitek and Episil)

4

5       153.    IR re-alleges and incorporates by reference herein, as if set forth in full, the

6   allegations set forth above in all paragraphs 1 through 54 of this Complaint.

7

8       154.    Lidow, Beach, Cao, Tam, Nakata, Tsang and Zhao, as officers and

9   employees of IR, entered into confidentiality and nondisclosure agreements as terms of

10  their employment.  Pursuant to these agreements, Defendants agreed that IR owned all

11  confidential patentable intellectual property developed during their employment and that

12  they would protect and preserve all of IR's information, trade secrets, IP and technology

13  during employment and thereafter.  Defendants breached these confidentiality and

14  nondisclosure agreements by transferring and disclosing IR's confidential information,

15  trade secrets, IP and technology to EPCC and to competitors of IR.

16

17      155.    Similarly, IR entered into NDAs with its business collaborators, Aixtron,

18  Hermes – Epitek and Episil, which prohibited them from disclosing any and all of IR's

19  confidential information, trade secrets, IP and technology to third parties.  Aixtron, Hermes

20  - Epitek and Episil breached these nondisclosure agreements by transferring and disclosing

21  IR's confidential information, trade secrets, IP and technology to EPCC and to competitors

22  of IR.

23

24      156.    Moreover, Lidow entered into a separation agreement with IR pursuant to

25  which he agreed to return any documents that are the property of IR and to provide IR with

26  a copy of all information included on his laptop computer.  Lidow breached this agreement

27  by transferring and disclosing IR's confidential information, trade secrets, IP and

28  technology to EPCC and to competitors of IR.

157.    IR performed all of its obligations under the confidentiality and nondisclosure agreements with its employees and/or officers, with its business collaborators, and under Lidow's separation agreement.

158.    As a legal and proximate cause of Defendants' breaches of contract, IR has sustained and will continue to sustain substantial economic damages. The precise nature and amount of such accrued and continuing damages is not presently known to IR and cannot be ascertained with any definiteness at this time. IR's actual damages will be proven at trial.

## TENTH CLAIM FOR RELIEF

(Tortious Breach of Contract Against Defendants Lidow, Beach, Cao, Tam, Nakata, Tsang, Zhao, Aixtron, Hermes - Epitek and Episil)

159.    IR re-alleges and incorporates by reference herein, as if set forth in full, the allegations set forth above in all paragraphs 1 through 54 and 152 through 157 of this complaint.

160.    The breach of contract by Defendants Lidow, Beach, Cao, Tam, Nakata, Tsang, Zhao, Aixtron, Hermes - Epitek and Episil was tortious because the breaches were accompanied by fraud and conversion by the Defendants against the interests of and harmful to IR.

161.    The means used to breach the contracts that these Defendants had and have with IR involved deceit and fraud.

162.    These Defendants intentionally breached the contracts they had and have with IR.

1    163.   In breaching the contracts these Defendants had and have with IR, they knew
2    or reasonably should have known that their breach would cause severe and immitigable
3    harm, hardship and substantial consequential damages to IR.

4

5    164.   By reason of these Defendants' tortious breaches of contracts, IR has been
6    and will continue to be damaged in an amount which is presently unknown to IR and
7    cannot be ascertained with any definiteness at this time.   IR's actual damages will be
8    proven at trial.

9

10    165.   By reason of their conduct, and because their conduct was willful, wanton
11    and malicious, IR is entitled to exemplary and punitive damages against these Defendants
12    in an amount sufficient to punish and deter them.

13

14    **ELEVENTH CLAIM FOR RELIEF**

15    (Intentional Interference with Contractual Relations

16    Against Defendant Lidow)

17

18    166.   IR re-alleges and incorporates by reference herein, as if set forth in full, the
19    allegations set forth above in all paragraphs 1 through 54 of this Complaint.

20

21    167.   At all times, Beach, Cao, Tam, Zhao, Tsang, and Nakata had valid, at-will
22    employment contracts and confidential and/or nondisclosure agreements with IR.   Lidow,
23    as one of the most senior officers at IR, knew of these at-will employment contracts and
24    confidential and/or nondisclosure agreements.

25

26    168.   Lidow intentionally encouraged and/or induced IR employees, including but
27    not limited to, Beach, Cao, Tam, Zhao and Tsang, to breach these at-will employment
28    contracts and confidential and/or nondisclosure agreements.   Specifically, Lidow

-37-

1 | intentionally encouraged and/or induced Beach, Cao, Tam, Zhao and Tsang to leave IR, to
2 | work for his newly-formed ECP Corporation, and to illegally transfer and/or disclose IR's
3 | confidential and propriety information, trade secrets, IP and technology, which were
4 | protected under the confidential and/or nondisclosure agreements.

5

6 |      169.    Lidow's intentional acts of interference resulted in actual breaches or
7 | disruptions of the at-will employment contractual relations between IR and its employees.

8

9 |      170.    Lidow's intentional acts of interference have directly and proximately caused
10 | damage to IR.  As a result of this conduct, IR has sustained and will continue to sustain
11 | substantial economic damages. The precise nature and amount of such accrued and
12 | continuing damages is not presently known to IR and cannot be ascertained with any
13 | definitiveness at this time.  IR's actual damages will be proven at trial.

14

15 |      171.    Lidow knowingly combined and conspired with others to cause IR's
16 | employees to breach their employment and/or nondisclosure agreements with IR.  As a
17 | direct and proximate result of these Defendants' actions, IR has suffered damages in an
18 | amount to be proven at trial.  These Defendants are jointly liable for the harm they have
19 | caused to IR through their conspiracy.

20

21 |      172.    In addition, because the conduct of Lidow was willful, wanton and
22 | malicious, IR is entitled to exemplary and punitive damages against Lidow in an amount
23 | sufficient to punish and deter them.

24

25

# VI.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment against Defendants as follows:

W02-EAST:6RAS1\200126651.4

INTERNATIONAL RECTIFIER COMPLAINT

1.    For compensatory damages in an amount according to proof at trial;

2.    For restitution of the amounts by which Defendant had been unjustly enriched;

3.    For a temporary restraining order, preliminary and permanent injunction enjoining Defendants and all persons acting in concert or participating with them from misusing IR's trade secrets and/or other confidential information and requiring Defendants to return all wrongfully obtained information to IR;

4.    For exemplary and punitive damages in an amount to punish Defendants from engaging in similar misconduct in the future;

5.    For costs of suit and attorneys' fees incurred herein under 18 U.S.C. § 1964, California Civil Code § 3426.4 and to the extent provided by law;

6.    For pre-judgment and post-judgment interest as provided by law;

7.    For such other and further relief as the Court may deem just and proper.

Dated:  September 8, 2008

ROBINS, KAPLAN, MILLER & CIRESI L.L.P.

By  _____
ROMAN M. SILBERFELD
RMSilberfeld@rkmc.com
Attorneys for International Rectifier

1   Dated:  September 8, 2008

2                        SHEPPARD, MULLIN, RICHTER & HAMPTON LLP

3

4                   By    _____

5                      ROBERT D. ROSE

6                      rrose@sheppardmullin.com

                      Attorneys for International Rectifier

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

-40-

1
2

## DEMAND FOR JURY TRIAL

3       Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Defendants demand a
4  jury trial as to all matters so triable.

5

6  Dated:  September 8, 2008

7                                        ROBINS, KAPLAN, MILLER & CIRESI L.L.P.
8
9                                        By  _____
10                                           ROMAN M. SILBERFELD
11                                           RMSilberfled@rkmc.com
                                             Attorneys for International Rectifier
12  Dated:  September 8, 2008
13
14                                        SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
15
                                          By  _____
16                                           ROBERT D. ROSE
17                                           rrose@sheppardmullin.com
                                             Attorneys for International Rectifier
18
19
20
21
22
23
24
25
26
27
28

W02-EAST:6RAS1\200126651.4                                    INTERNATIONAL RECTIFIER COMPLAINT

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

### NOTICE OF ASSIGNMENT TO UNITED STATES MAGISTRATE JUDGE FOR DISCOVERY

This case has been assigned to District Judge Manuel Real and the assigned discovery Magistrate Judge is Andrew J. Wistrich.

The case number on all documents filed with the Court should read as follows:

## CV08- 5869 R (AJWx)

Pursuant to General Order 05-07 of the United States District Court for the Central District of California, the Magistrate Judge has been designated to hear discovery related motions.

Unless otherwise ordered, the United States District Judge assigned to this case will hear and determine all discovery related motions.

====================================================

**NOTICE TO COUNSEL**

*A copy of this notice must be served with the summons and complaint on all defendants (if a removal action is filed, a copy of this notice must be served on all plaintiffs).*

Subsequent documents must be filed at the following location:

| [X] Western Division | [ ] Southern Division | [ ] Eastern Division |
|---|---|---|
| 312 N. Spring St., Rm. G-8 | 411 West Fourth St., Rm. 1-053 | 3470 Twelfth St., Rm. 134 |
| Los Angeles, CA 90012 | Santa Ana, CA 92701-4516 | Riverside, CA 92501 |

Failure to file at the proper location will result in your documents being returned to you.

CV-18 (03/06)      NOTICE OF ASSIGNMENT TO UNITED STATES MAGISTRATE JUDGE FOR DISCOVERY

Roman M. Silberfeld, State Bar #62783
ROBINS, KAPLAN, MILLER & CIRESI L.L.P.
RMSilberfeld@rkmc.com
2049 Century Park East, Ste. 3400
Los Angeles, CA  90067-3208
Telephone: 310-552-0130
Facsimile: 310-229-5800
See Attached
Additional Counsel

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

INTERNATIONAL RECTIFIER, a Delaware
Corporation

PLAINTIFF(S)

v.

ALEX LIDOW, an individual; ROBERT BEACH, an
individual; JIANJUAN "JOE" CAO, an
individual; DAVID TAM, an individual;
*(Continued on Attached Page)*   DEFENDANT(S).

CASE NUMBER

CV08-05869  R AJWx

**SUMMONS**

TO:   DEFENDANT(S): _____

A lawsuit has been filed against you.

Within 20_____ days after service of this summons on you (not counting the day you received it), you must serve on the plaintiff an answer to the attached [X] complaint [ ] _____ amended complaint [ ] counterclaim [ ] cross-claim or a motion under Rule 12 of the Federal Rules of Civil Procedure. The answer or motion must be served on the plaintiff's attorney, Roman M. Silberfeld** _____ , whose address is 2049 Century Park East, Ste. 3400, Los Angeles, CA 90067-3208____ . If you fail to do so, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

**Service to be made also upon: Robert D. Rose, 501 West Broadway, 19th Floor, San Diego, CA 92101-3598

Clerk, U.S. District Court

Dated:   **SEP - 8 2008**

By:   _Ann M. Martinez_

Deputy Clerk

*(Seal of the Court)*

*[Use 60 days if the defendant is the United States or a United States agency, or is an officer or employee of the United States. Allowed 60 days by Rule 12(a)(3)].*

## Attachment to Summons

## Defendants Continued

ALANA NAKATA, an individual; STEPHEN TSANG, an individual; GUANGYUANG ZHAO, an individual; GNOEM SYSTEMS, INC., a corporation; AIXTRON AG, a corporation; EPISIL TECHNOLOGIES, INC; a corporation; HERMES – EPITEK, a corporation; and EFFICIENT POWER CONVERSION CORPORATION, a corporation

## **Attachment to Summons**

## **Additional Plaintiff's Counsel**

ROBERT D. ROSE, Cal. Bar No. 62559
SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
rrose@sheppardmullin.com
501 West Broadway, 19th Floor
San Diego, CA  92101-3598
Telephone: 619-338-6500
Facsimile: 619-234-3815

**UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA**
CIVIL COVER SHEET

| | |
|---|---|
| **I (a) PLAINTIFFS** (Check box if you are representing yourself ☐)<br>INTERNATIONAL RECTIFIER, a Delaware Corporation | **DEFENDANTS**<br>ALEX LIDOW, an individual, et al. |

| | |
|---|---|
| **(b)** Attorneys (Firm Name, Address and Telephone Number. If you are representing yourself, provide same.)<br>Roman M. Silberfeld, State Bar No. 62783<br>Robins, Kaplan, Miller & Ciresi L.L.P., 2049 Century Park East, Ste. 3400,<br>Los Angeles, CA  90067; (310) 552-0130 (See Attached Additional Counsel) | Attorneys (If Known) |

**II. BASIS OF JURISDICTION** (Place an X in one box only.)

☐ 1 U.S. Government Plaintiff     ☑ 3 Federal Question (U.S. Government Not a Party)

☐ 2 U.S. Government Defendant    ☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES** - For Diversity Cases Only
(Place an X in one box for plaintiff and one for defendant.)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business in this State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. ORIGIN** (Place an X in one box only.)

☑ 1 Original Proceeding   ☐ 2 Removed from State Court   ☐ 3 Remanded from Appellate Court   ☐ 4 Reinstated or Reopened   ☐ 5 Transferred from another district (specify):   ☐ 6 Multi-District Litigation   ☐ 7 Appeal to District Judge from Magistrate Judge

**V. REQUESTED IN COMPLAINT:   JURY DEMAND:** ☑ Yes  ☐ No (Check 'Yes' only if demanded in complaint.)

**CLASS ACTION under F.R.C.P. 23:** ☐ Yes  ☑ No     ☑ **MONEY DEMANDED IN COMPLAINT:** $ To Be Determined

**VI. CAUSE OF ACTION** (Cite the U.S. Civil Statute under which you are filing and write a brief statement of cause.  Do not cite jurisdictional statutes unless diversity.)

**VII. NATURE OF SUIT** (Place an X in one box only.)

| OTHER STATUTES | CONTRACT | TORTS PERSONAL INJURY | TORTS PERSONAL PROPERTY | PRISONER PETITIONS | LABOR |
|---|---|---|---|---|---|
| ☐ 400 State Reapportionment | ☐ 110 Insurance | ☐ 310 Airplane | ☐ 370 Other Fraud | ☐ 510 Motions to Vacate Sentence Habeas Corpus | ☐ 710 Fair Labor Standards Act |
| ☐ 410 Antitrust | ☐ 120 Marine | ☐ 315 Airplane Product Liability | ☐ 371 Truth in Lending | | ☐ 720 Labor/Mgmt. Relations |
| ☐ 430 Banks and Banking | ☐ 130 Miller Act | ☐ 320 Assault, Libel & Slander | ☐ 380 Other Personal Property Damage | ☐ 530 General | ☐ 730 Labor/Mgmt. Reporting & Disclosure Act |
| ☐ 450 Commerce/ICC Rates/etc. | ☐ 140 Negotiable Instrument | ☐ 330 Fed. Employers' Liability | ☐ 385 Property Damage Product Liability | ☐ 535 Death Penalty | |
| ☐ 460 Deportation | ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 340 Marine | BANKRUPTCY | ☐ 540 Mandamus/ Other | ☐ 740 Railway Labor Act |
| ☑ 470 Racketeer Influenced and Corrupt Organizations | | ☐ 345 Marine Product Liability | ☐ 422 Appeal 28 USC 158 | ☐ 550 Civil Rights | ☐ 790 Other Labor Litigation |
| ☐ 480 Consumer Credit | ☐ 151 Medicare Act | ☐ 350 Motor Vehicle | ☐ 423 Withdrawal 28 USC 157 | ☐ 555 Prison Condition | ☐ 791 Empl. Ret. Inc. Security Act |
| ☐ 490 Cable/Sat TV | ☐ 152 Recovery of Defaulted Student Loan (Excl. Veterans) | ☐ 355 Motor Vehicle Product Liability | FORFEITURE / PENALTY | | PROPERTY RIGHTS |
| ☐ 810 Selective Service | | ☐ 360 Other Personal Injury | CIVIL RIGHTS | ☐ 610 Agriculture | ☐ 820 Copyrights |
| ☐ 850 Securities/Commodities/ Exchange | ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 362 Personal Injury- Med Malpractice | ☐ 441 Voting | ☐ 620 Other Food & Drug | ☐ 830 Patent |
| ☐ 875 Customer Challenge 12 USC 3410 | ☐ 160 Stockholders' Suits | ☐ 365 Personal Injury- Product Liability | ☐ 442 Employment | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 840 Trademark |
| ☐ 890 Other Statutory Actions | ☐ 190 Other Contract | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 443 Housing/Acco-mmodations | | SOCIAL SECURITY |
| ☐ 891 Agricultural Act | ☐ 195 Contract Product Liability | REAL PROPERTY | ☐ 444 Welfare | ☐ 630 Liquor Laws | ☐ 861 HIA (1395ff) |
| ☐ 892 Economic Stabilization Act | ☐ 196 Franchise | ☐ 210 Land Condemnation | ☐ 445 American with Disabilities - Employment | ☐ 640 R.R. & Truck | ☐ 862 Black Lung (923) |
| ☐ 893 Environmental Matters | | ☐ 220 Foreclosure | IMMIGRATION | ☐ 650 Airline Regs | ☐ 863 DIWC/DIWW (405(g)) |
| ☐ 894 Energy Allocation Act | | ☐ 230 Rent Lease & Ejectment | ☐ 462 Naturalization Application | ☐ 660 Occupational Safety/Health | ☐ 864 SSID Title XVI |
| ☐ 895 Freedom of Info. Act | | ☐ 240 Torts to Land | ☐ 463 Habeas Corpus- Alien Detainee | ☐ 690 Other | ☐ 865 RSI (405(g)) |
| ☐ 900 Appeal of Fee Determi-nation Under Equal Access to Justice | | ☐ 245 Tort Product Liability | ☐ 465 Other Immigration Actions | | FEDERAL TAX SUITS |
| ☐ 950 Constitutionality of State Statutes | | ☐ 290 All Other Real Property | ☐ 440 Other Civil Rights | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) |
| | | ☐ 446 American with Disabilities - Other | | | ☐ 871 IRS-Third Party 26 USC 7609 |

**FOR OFFICE USE ONLY:**   Case Number:   **CV08-05869**

**AFTER COMPLETING THE FRONT SIDE OF FORM CV-71, COMPLETE THE INFORMATION REQUESTED BELOW.**

CV-71 (05/08)                    CIVIL COVER SHEET                    Page 1 of 2

**UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA**
CIVIL COVER SHEET

**VIII(a). IDENTICAL CASES:** Has this action been previously filed in this court and dismissed, remanded or closed? ☒No ☐ Yes
If yes, list case number(s):

**VIII(b). RELATED CASES:** Have any cases been previously filed in this court that are related to the present case? ☐ No ☒Yes
If yes, list case number(s): Koller v. International Rectifier, No. 07 cv 02544; Levine v. International Rectifier, et al., No. 07 cv 3123

**Civil cases are deemed related if a previously filed case and the present case:**
(Check all boxes that apply)   ☐ A.  Arise from the same or closely related transactions, happenings, or events; or
                               ☐ B.  Call for determination of the same or substantially related or similar questions of law and fact; or
                               ☒ C.  For other reasons would entail substantial duplication of labor if heard by different judges; or
                               ☐ D.  Involve the same patent, trademark or copyright, _and_ one of the factors identified above in a, b or c also is present.

**IX. VENUE:** (When completing the following information, use an additional sheet if necessary.)

(a)   List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which **EACH** named plaintiff resides.
☐   Check here if the government, its agencies or employees is a named plaintiff. If this box is checked, go to item (b).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Los Angeles County | |

(b)   List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which **EACH** named defendant resides.
☐   Check here if the government, its agencies or employees is a named defendant. If this box is checked, go to item (c).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Los Angeles County (Defendants Lidow, Beach, Cao, Tam, Nakata, Zhao and Hermes-Epiket | Santa Clara County (Aixtron/Hermes-Epitek)<br>Hong Kong (Tsang)<br>Taiwan (Episil) |

(c)   List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which **EACH** claim arose.
Note: In land condemnation cases, use the location of the tract of land involved.

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Los Angeles County | Germany<br>Taiwan |

**\* Los Angeles, Orange, San Bernardino, Riverside, Ventura, Santa Barbara, or San Luis Obispo Counties**
Note: In land condemnation cases, use the location of the tract of land involved.

X. SIGNATURE OF ATTORNEY (OR PRO PER): _Roman M. Silberfeld_    Date September 8, 2008

Notice to Counsel/Parties:   The CV-71 (JS-44) Civil Cover Sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law. This form, approved by the Judicial Conference of the United States in September 1974, is required pursuant to Local Rule 3-1 is not filed but is used by the Clerk of the Court for the purpose of statistics, venue and initiating the civil docket sheet. (For more detailed instructions, see separate instructions sheet.)

Key to Statistical codes relating to Social Security Cases:

| Nature of Suit Code | Abbreviation | Substantive Statement of Cause of Action |
|---|---|---|
| 861 | HIA | All claims for health insurance benefits (Medicare) under Title 18, Part A, of the Social Security Act, as amended. Also, include claims by hospitals, skilled nursing facilities, etc., for certification as providers of services under the program. (42 U.S.C. 1935FF(b)) |
| 862 | BL | All claims for "Black Lung" benefits under Title 4, Part B, of the Federal Coal Mine Health and Safety Act of 1969. (30 U.S.C. 923) |
| 863 | DIWC | All claims filed by insured workers for disability insurance benefits under Title 2 of the Social Security Act, as amended; plus all claims filed for child's insurance benefits based on disability. (42 U.S.C. 405(g)) |
| 863 | DIWW | All claims filed for widows or widowers insurance benefits based on disability under Title 2 of the Social Security Act, as amended. (42 U.S.C. 405(g)) |
| 864 | SSID | All claims for supplemental security income payments based upon disability filed under Title 16 of the Social Security Act, as amended. |
| 865 | RSI | All claims for retirement (old age) and survivors benefits under Title 2 of the Social Security Act, as amended. (42 U.S.C. (g)) |

## Attachment to Civil Cover Sheet

## Additional Plaintiff's Counsel

ROBERT D. ROSE, Cal. Bar No. 62559
SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
rrose@sheppardmullin.com
501 West Broadway, 19th Floor
San Diego, CA  92101-3598
Telephone: 619-338-6500
Facsimile: 619-234-3815